IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

MARK MEADOWS,

    Plaintiff,

v.                                                            CIVIL ACTION NO. 1:19-cv-00739

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

**PROPOSED FINDINGS & RECOMMENDATION**

Plaintiff Mark Meadows ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f. (ECF No. 2.) By standing order entered on January 4, 2016, and filed in this case on October 11, 2019, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3.) Presently pending before this Court are Claimant's motion for judgment on the pleadings and brief in support (ECF Nos. 11, 12) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 13).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Claimant's request to reverse the Commissioner's decision (ECF Nos. 11, 12), **DENY** the

Commissioner's request to affirm his decision (ECF No. 13), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter for further proceedings.

## I.   BACKGROUND

### A. *Information about Claimant and Procedural History of Claim*

Claimant was 30 years old at the time he filed for SSI benefits and 33 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 241.)[1] He completed the tenth grade. (*Id.* at 85, 241.) He has been employed at a logging company and as a cook and dishwasher at a restaurant. (*Id.* at 248.) Claimant alleges that he became disabled on January 1, 2009, due to severe depression, bipolar disorder, "Hear and See Things (No one else does)," "Can't Get Along With People," anxiety, paranoia, acid reflux, kidney stones, and back pain. (*Id.* at 241, 247.)

Claimant protectively filed his application for benefits on March 14, 2016. (*Id.* at 225–26; *see id.* at 227–32.) His claim was initially denied on August 4, 2016, and again upon reconsideration on January 6, 2017. (*Id.* at 141–45, 155–61.) Thereafter, on January 17, 2017, Claimant filed a written request for hearing. (*Id.* at 162–64.) An administrative hearing was held before an ALJ on July 13, 2018, in Charleston, West Virginia, with Claimant appearing by video from Bluefield, West Virginia. (*Id.* at 77–113.) On October 25, 2018, the ALJ rendered an unfavorable decision. (*Id.* at 19–38.) Claimant then sought review of the ALJ's decision by the Appeals Council on December 3, 2018. (*Id.* at 220–24.) The Appeals Council denied Claimant's request for review on August 12, 2019, and the ALJ's decision became the final decision of the Commissioner on that date. (*Id.* at 1–7.)

---

[1] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 8.

Claimant timely brought the present action on October 10, 2019, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2.) The Commissioner filed an Answer (ECF No. 7) and a transcript of the administrative proceedings (ECF No. 8). Claimant subsequently filed his motion for judgment on the pleadings and brief in support (ECF Nos. 11, 12), and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 13). As such, this matter is fully briefed and ready for resolution.

B. *Relevant Medical Evidence*

Claimant adopts the ALJ's summary of his hearing testimony and the medical evidence relating to his mental impairments. (ECF No. 12 at 5; *see* Tr. at 27–30.) As such, the undersigned incorporates the ALJ's review of the evidence without repeating it here.

C. *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r of Soc. Sec.*, 699 F.3d

3

337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The

claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d),

416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant had not engaged in substantial gainful activity since the date of his SSI application. (*Id.* at 24.) She found that Claimant's lumbar degenerative disc disease, bipolar disorder with depressed mood, anxiety, and unspecified mood disorder constituted "severe" impairments. (*Id.*) However, she found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in

20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 25–27.)  Upon assessing Claimant's RFC, the ALJ determined that Claimant is able "to perform medium work . . . except that he can frequently climb, balance, stoop, kneel, crouch, and crawl." (*Id.* at 27.)  She further found that Claimant "can perform simple, routine, repetitive work that does not require an assembly line or production rate pace" but "can tolerate no more than occasional interaction with coworkers and supervisors and can never work with the public or in crowds." (*Id.*)  In addition, she determined that Claimant "can tolerate no more than a few changes in the work environment, defined as 3–4 changes per workday or work shift." (*Id.*)

The ALJ concluded that given the limitations imposed by the Claimant's RFC, he was able to perform his past relevant work as a dishwasher "as actually and generally performed." (*Id.* at 31.)  Alternatively, she found that Claimant, as "a younger individual" with "a limited education" whose "[t]ransferability of job skills is not an issue in this case," is capable of working as a laundry worker, groundskeeper, or janitor.  (*Id.* at 32.)  As a result, the ALJ concluded that Claimant was not "under a disability . . . since March 14, 2016, the date the application was filed." (*Id.* at 33.)

## II.   LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

### III. ANALYSIS

Claimant argues that the ALJ insufficiently explained her reasons for including certain limitations stemming from his mental impairments in his RFC. (ECF No. 12 at 5–7.) He further asserts that the ALJ did not adequately explain her "Paragraph B" criteria findings when assessing the severity of his mental impairments. (*Id.* at 8–9.) Finally, he contends that the ALJ did not explain her reasons for rejecting his subjective complaints. (*Id.* at 9–10.) Claimant asks this Court to reverse the Commissioner's decision and award him benefits or to reverse the Commissioner's decision and remand this matter to the ALJ. (*Id.* at 10.) The Commissioner responds that the ALJ appropriately determined that Claimant "could perform a range of unskilled work with limited interpersonal interactions" and that the ALJ's "Paragraph B" criteria findings are supported by substantial evidence. (ECF No. 13 at 7–16.)

#### A. "Paragraph B" Criteria

Claimant argues that in assessing whether his mental impairments satisfied the "Paragraph B" criteria of Listings 12.04, 12.06, and 12.08 at the third step of the

8

sequential evaluation process, the ALJ failed to explain why she found that he had "marked" limitations in interacting with others, rather than "extreme" limitations, and that he had "moderate" limitations in adapting or managing himself, instead of "marked" limitations. (ECF No. 12 at 8.) At step three, the ALJ is tasked with determining whether the claimant's physical and mental impairments, either singularly or in combination, meet or medically equal a Listing. *Shinaberry v. Saul*, 952 F.3d 113, 118–19 (4th Cir. 2020) (quoting *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)). The Listings for mental disorders—with the exception of Listing 12.05 for intellectual disorders, which is not relevant in this case—require the claimant to "(1) have an impairment that satisfies the description of the particular disorder contained in the introductory paragraph; (2) document the presence of the disorder through medical findings (paragraph A criteria); and (3) substantiate impairment-related functional limitations that are incompatible with the ability to do any gainful activity (paragraph B or paragraph C criteria)." *Berry v. Astrue*, No. 3:10-cv-00430, 2011 WL 2462704, at *10 (S.D.W. Va. June 17, 2011); *see* 20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.00A2.

When evaluating the "Paragraph B" criteria, the ALJ "rate[s] the degree of [the claimant's] functional limitation based on the extent to which [his] impairment(s) interfere[] with [his] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.920a(c)(2). To do so, the ALJ considers four functional areas—understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself—and specifies whether the claimant's limitations are none, mild, moderate, marked, or extreme. *Id.* § 416.920a(c)(4). A claimant's mental disorder satisfies the

"Paragraph B" criteria if it "result[s] in extreme limitation of one, or marked limitation of two," of the four areas of mental functioning. *Id.* pt. 404, subpt. P, appx. 1, § 12.00F2.

Here, the ALJ determined that Claimant had no limitation in understanding, remembering, and applying information, reasoning that although he testified "that he did not complete the eleventh grade" and was unable to obtain a GED and "that he had difficulty concentrating," the consultative psychological examiner's "[m]ental status examination indicated logical and coherent thought processes; his memory was within normal limits." (Tr. at 25.) The ALJ further found that Claimant had a marked limitation in interacting with others, citing his testimony about being suspended from school for fighting and "multiple episodes of confrontations/disagreements/arguments with others, including employers, treating sources, and other individual's [sic] in classes and therapy sessions" as well as his statements to the consultative psychological examiner that he has no friends and does not get along with his father or sister but gets along with his mother, brother, and sister-in-law. (*Id.* at 25–26.) She also credited the consultative psychological examiner's observation that Claimant "displayed abnormal social functioning." (*Id.* at 26.)

In addition, the ALJ determined that Claimant had a moderate limitation in concentrating, persisting, and maintaining pace, mentioning his testimony "that he did not complete high school and was not successful obtaining a GED, despite four attempts," that he had never held a job for more than seven months, "that he is easily defeated and returns to drug use when he is confronted with stressful situations," and "that he can maintain no activity for longer than five minutes" but contrasting it with his reports to the consultative psychological examiner "that he watched television on a daily basis and also enjoyed playing games on the computer" and "that he attended anger management

10

classes once a week" and the consultative psychological examiner's findings of normal concentration. (*Id.*) Finally, the ALJ found that Claimant had a moderate limitation in adapting or managing himself based on his testimony "that he uses drugs as a way to 'escape his reality'" and struggled with homelessness, "that he lost his driver's license due to unpaid fines and a history of domestic conflict," and "that he 'self-medicated' by drinking" and had attempted suicide, along with the consultative psychological examiner's observations that Claimant was "casually dressed with fair grooming and personal hygiene" and Claimant's reports "that he takes medications daily, feeds his dog, and also did some yard work activities." (*Id.*)

Claimant essentially argues that it was not enough for the ALJ to explain her reasons for the findings she did make and that she was required to provide justification for findings that she did not make. (ECF No. 12 at 8–9.) But he provides no legal support for that assertion (*id.*), and it takes the directive that the ALJ adequately explain her conclusions too far: the ALJ clearly must explain why she ruled the way she did, but she has no complementary obligation to explain why she did not rule another way. *See Lawson v. Colvin*, No. 2:14-cv-00030, 2016 WL 4940262, at *12 (W.D. Va. Feb. 24, 2016) (holding that ALJ's references to record evidence "adequately explain his conclusion that Lawson's mental impairments did not meet the 'paragraph B' criteria"). Instead, the applicable standard of review is whether the ALJ's ultimate conclusions are supported by substantial evidence. *Bowcott v. Berryhill*, No. 3:17-cv-02329, 2018 WL 4583617, at *4 (S.D.W. Va. Sept. 25, 2018) (reviewing ALJ's "Paragraph B" findings for substantial evidence). In this case, they are.

A "marked" limitation in a given functional area indicates that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained

11

basis is seriously limited." 20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.00F2d. By contrast, an "extreme" limitation indicates that the claimant cannot function "independently, appropriately, effectively, and on a sustained basis" in a given functional area at all. *Id.* pt. 404, subpt. P, appx. 1, § 12.00F2e. In explaining that Claimant had "a marked limitation" in interacting with others, the ALJ credited Claimant's testimony about his "significant problems getting along with others" and the consultative psychological examiner's observation that Claimant "displayed abnormal social functioning," but she also noted Claimant's statements that he was able to get along with his mother, brother, and sister-in-law. (Tr. at 25–26.) Elsewhere in her analysis, the ALJ accorded "great weight" to the state-agency psychologists' opinions that Claimant had "marked difficulties maintaining social functioning" and tied them to her findings at step three. (*Id.* at 31.) In short, the ALJ pointed to record evidence to support her conclusion that Claimant had a marked limitation in interacting with others, and that evidence shows that her conclusion was reasonable. *See Bowcott*, 2018 WL 4583617, at *4 ("[T]he standard of review here is 'substantial evidence,' and substantial evidence is defined as evidence which a 'reasoning mind' would accept as sufficient to support a particular conclusion.").

The same is true for the ALJ's finding that Claimant had a moderate limitation in concentrating, persisting, and maintaining pace. A "moderate" limitation in a given functional area indicates that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.00F2c. The ALJ contrasted Claimant's testimony that he did not finish high school or obtain a GED, had never held a job for more than seven months, and was unable to do anything for longer than five minutes with his statements to the consultative psychological examiner that he watched television and played computer games daily and

attended anger management classes weekly and her objective findings that he had normal concentration. (Tr. at 26.) She also accorded "great weight" to the state-agency psychological consultants' opinions that Claimant had "mild difficulties maintaining concentration, persistence, or pace" (*id.* at 31), although she ultimately found Claimant to be more limited in that area than they opined. Again, the ALJ explained using record evidence her reasons for reaching her conclusion.

She did so for her finding that Claimant had a moderate limitation in adapting or managing himself, as well. She cited Claimant's testimony about his drinking and drug use, homelessness, the loss of his driver's license, and his previous suicide attempt and considered it alongside the consultative psychological examiner's observation that he was "casually dressed with fair grooming and personal hygiene" and Claimant's statements that "he takes medications daily, feeds his dog, and also did some yard work activities." (Tr. at 26.) In light of this evidence, the ALJ's conclusion is a reasonable one.

In sum, the undersigned **FINDS** that the ALJ's "Paragraph B" findings are supported by substantial evidence and adequately explained.

B. *Subjective Complaints*

Claimant also contends that the ALJ erred by "deliver[ing] her RFC findings prior to engaging in the credibility analysis" and by failing to explain why she found his subjective complaints about his mental impairments to be less than wholly credible. (ECF No. 12 at 9–10.) As part of the RFC assessment, the ALJ must evaluate a claimant's "statements and symptoms regarding the limitations caused by her impairments." *Linares v. Colvin*, No. 5:14-cv-00120, 2015 WL 4389533, at *5 (W.D.N.C. July 17, 2015) (citing 20 C.F.R. §§ 404.1529, 416.929; *Craig v. Chater*, 76 F.3d 585, 593–96 (4th Cir. 1996)). To evaluate the disabling effect of an individual's symptoms, the ALJ first

13

determines whether "objective medical evidence" supports the existence of "a condition reasonably likely to cause the [symptoms] claimed." *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). If so, the ALJ then "evaluate[s] the intensity and persistence of [the claimant's] symptoms" to "determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). An individual's subjective complaints about her symptoms are relevant to the latter determination. *See id.* §§ 404.1529(c)(3), 416.929(c)(3). Put simply, the claimant's symptoms "must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the [symptoms], in the amount and degree, alleged by the claimant." *Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005) (per curiam) (quoting *Craig*, 76 F.3d at 591). The ALJ is obligated to "assess whether the claimant's subjective symptom statements are consistent with the record as a whole." *Vass v. Berryhill*, No. 7:17-cv-87, 2018 WL 4737236, at *6 n.4 (W.D. Va. June 12, 2018), *adopted by* 2018 WL 4704058 (W.D. Va. Sept. 30, 2018).

Turning first to Claimant's argument that the ALJ improperly stated her RFC assessment prior to evaluating his subjective complaints, Claimant appears to refer to the heading merely outlining the ALJ's RFC findings, which is part of every written decision and is not—contrary to Claimant's assertion—"clearly condemned" in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). (*See* Tr. at 27; ECF No. 12 at 9.) Rather, *Mascio* specifically rejects boilerplate language weighing the claimant's subjective complaints against his RFC, holding that the ALJ must instead "compare[] [the claimant's] alleged functional limitations from [subjective complaints] to the other evidence in the record, not to [his RFC]." 780 F.3d at 639. The ALJ in this case did not use that boilerplate language, and

14

she stated that she judged Claimant's subjective complaints in light of "the medical evidence and other evidence in the record." (Tr. at 28.) Therefore, the undersigned **FINDS** that the ALJ's statement of the RFC assessment as a heading for her discussion does not inherently violate *Mascio*'s directives.

However, Claimant aptly notes that the ALJ's analysis of his subjective complaints as they relate to his mental impairments is lacking. The ALJ correctly stated the applicable legal standard for evaluating subjective complaints at the outset of her discussion. (*Id.* at 27.) She then summarized Claimant's hearing testimony, in particular mentioning Claimant's statements that "he did not complete high school and has been unable to obtain a GED," that "he is unable to maintain work due to difficulty getting along with others" and had been fired from or quit jobs due to conflicts with co-workers and supervisors, that "his longest employment lasted seven months," and that he was incarcerated for four years. (*Id.*) She also recalled that Claimant "described mental health symptoms including frequently [sic] crying spells, difficulty sleeping, racing thoughts, hallucinations, suicidal thoughts, anger outbursts, and difficulty getting along with people." (*Id.*) The ALJ explained that although Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 28.)

The ALJ then reviewed the medical evidence of record, beginning with several extended hospital stays for mental health treatment in 2011, 2012, and 2013. (*Id.* at 28–29.) She detailed that Claimant's symptoms improved during the latter half of 2014 and "appeared controlled with medication," but that he attempted suicide several months

15

later following a "raid" of his residence and "an altercation with his mother" and was discharged from the hospital because he was "belligerent and uncooperative" and "refused all medications." (*Id.* at 29.) The ALJ noted that Claimant's condition seemed to improve during the remainder of 2015, as he was working toward his GED and was employed, and he "acquired an apartment and also got his driver's license back" in the spring of 2016. (*Id.* at 29–30.) She also mentioned that Claimant sought mental health treatment in June 2018 and "reported increased depression and anxiety associated with discontinued medications." (*Id.* at 30.)

Despite this extensive summary of Claimant's mental health treatment, the ALJ next explained that she discounted his subjective complaints about his mental impairments as "inconsistent because in early 2016, [he] wrote and recorded a song and uploaded it to 'YouTube.'" (*Id.*) The remainder of her analysis seems to relate to Claimant's physical impairments. (*Id.* at 30–31.) Although the ALJ is undoubtedly free to interpret Claimant's writing and recording a song as an indication of improvement in his mental condition, her evaluation of Claimant's subjective complaints is incomplete at best. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). The ALJ's discussion does not comply with these requirements. It is evident from her consideration of Claimant's mental impairments at step three of the sequential evaluation process that the ALJ credited Claimant's subjective statements to some extent, but her written decision eschews an explanation of which statements she found to be supported by the evidence and which ones she discounted, thereby foreclosing

16

this Court's review. *See White v. Astrue*, No. 3:08-cv-01451, 2010 WL 1050993, at *2 (S.D.W. Va. Mar. 16, 2010) (remanding case because ALJ's one-paragraph discussion did "not satisfy the [ALJ's] 'duty of explanation when making determinations about the credibility of a claimant's testimony'" (internal quotation marks omitted) (quoting *Smith v. Heckler*, 782 F.2d 1176, 1181 (4th Cir. 1986))). The undersigned **FINDS** that this was error.

C. *RFC Assessment*

Relatedly, Claimant argues that the ALJ did not adequately explain her reasons for including the functional limitations related to his mental impairments in his RFC. (ECF No. 12 at 5–7.) "In the RFC assessment, the ALJ uses all relevant evidence, medical or otherwise, to determine a claimant's 'ability to meet the physical, mental, sensory, and other requirements of work.'" *Ladda v. Berryhill*, 749 F. App'x 166, 172 (4th Cir. 2018) (quoting 20 C.F.R. §§ 404.1545, 416.945). The ALJ's decision "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). "Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). Stated another way, "the ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis deleted) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

Here, the ALJ began her review of the evidence of record by summarizing Claimant's hearing testimony. (Tr. at 27.) She then conducted a thorough review of the

evidence of record relating to Claimant's mental impairments. (*Id.* at 28–30.) She also considered the opinions of the state-agency psychological consultants. (*Id.* at 30.) However, nowhere in her analysis does the ALJ connect this evidence to any of the mental limitations she lists in Claimant's RFC, and her discussion does not itself "provide[] a significant basis to meaningfully review [her] RFC conclusions." *Geissler v. Berryhill*, No. 2:16-cv-06590, 2017 WL 3598787, at *6 (S.D.W. Va. July 31, 2017) (quoting *Ashcraft v. Colvin*, No. 3:13-cv-00417-RLV-DCK, 2015 WL 9304561, at *7 (W.D.N.C. Dec. 21, 2015)), *adopted by* 2017 WL 3599193 (Aug. 21, 2017). In fact, once she outlines those limitations in the heading to the RFC assessment portion of her decision, she never mentions them again. (*See* Tr. at 27–31.) Although the necessity of a limitation in interacting with others in the workplace can reasonably be inferred from the multiple record references to Claimant's struggles to get along with people in his life, the ALJ never explicitly addresses it in her RFC assessment, and the undersigned is left to guess about her reasons for including the other mental limitations in Claimant's RFC. A proper RFC assessment not only "summarize[s] evidence that [the ALJ] found credible, useful, and convenient" but also "explain[s] how [the ALJ] concluded—*based on this evidence*—that [the claimant] could actually perform the tasks required by [the RFC]." *Woods*, 888 F.3d at 694 (emphasis in original). The undersigned **FINDS** that the ALJ's RFC assessment improperly lacks such an explanation.

IV.    CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Claimant's request to reverse the Commissioner's decision (ECF Nos. 11, 12), **DENY** the Commissioner's request to affirm his decision (ECF

No. 13), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter for further proceedings.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Faber.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: July 22, 2020

Dwane L. Tinsley
United States Magistrate Judge